UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

FAIGY MINKOWITZ,

                              Plaintiff,

                                                    **AMENDED COMPLAINT**

            - against -

                                                    CV 03-1335 (DGT) (VVP)

THE CHUBB INSTITUTE, INC.,

                              Defendant,

------------------------------------------------------------------------X

        Plaintiff, FAIGY MINKOWITZ, by and through her attorney, Howard J.

Peltz, alleges as and for her amended complaint as follows:

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST THE CHUBB INSTITUTE

        1. At all the times hereafter mentioned, the Plaintiff, Faigy Minkowitz,

was a resident of the State of New York.

        2. At all the times hereinafter mentioned, the Defendant, The Chubb

Institute, Inc., was a foreign corporation duly authorized to transact business in New

York State.

        3.  At all the times hereinafter mentioned, the Defendant maintained

1

places of business in New York State and New York County and presently maintains a place of business in New York County.

4. On or about December 19, 2000 the Plaintiff and the Defendant entered into a certain Enrollment Agreement (the "Agreement") wherein the Defendant was to provide certain educational services training to Plaintiff for an agreed upon price.

5. Pursuant to such Agreement the Defendant was to provide education and training to Plaintiff so that Plaintiff would be qualified to obtain employment in computer related fields.

6. In order to induce the Plaintiff to enter into such Agreement and to enroll in the Defendant's computer program, the Defendant made many representations. Such representations included representations made in published materials that the Plaintiff received and reviewed prior to enrollment.

7. Among the representations made by the Defendant was that the Defendant was dedicated to providing education and training that would lead to employment in the "Information Technology" field and was qualified to provide such education and training.

2

8. The Defendant represented, among other things, that it would provide "the highest quality training that enables a person to start or enhance their career as a computer professional."

9. The Defendant represented, among other things, that its facilities and faculty were designed "to stimulate a business-like environment so students not only gain technical skills, but develop the professional attributes that are attractive to employers."

10.   The Defendant represented that it had instructors that were knowledgeable in the computer field and were able to skillfully and professionally impart such knowledge to students.

11. The Plaintiff was induced to enter into the Agreement based upon the various representations made by the Defendant.

12.   The Plaintiff was induced to enter into the Defendant's Web Development and Business Training Program (the "Program") based upon the representations of the Defendant.

13. The aforesaid Program consisted of six (6) "quarters" to take place

3

over 21 months.

14. The Plaintiff agreed to pay a tuition of $15,324.00 for the entire Program and a registration fee of $100.00 in return for the professional services and training promised by the Defendant.

15. The Plaintiff attended classes provided by the Defendant for nine (9) months and paid the Defendant the sum of $8,354.00 in tuition over such period of time.

## AS AND FOR A FIRST CAUSE OF ACTION

16. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "15" herein.

17. The Defendant breached its Agreement with the Plaintiff.

18. The Defendant was not dedicated to providing education and training that would lead to employment in the "Information Technology" field.

19. The Defendant did not provide "the highest quality training" that would enable a person to "start or enhance their career as a computer professional."

4

20. The Defendant's facilities and faculty did not "stimulate a business-like environment so that students would not only gain technical skills, but would develop the professional attributes that are attractive to employers."

21.    The Defendant's instructors were not able to skillfully and professionally impart knowledge to students.

22. In particular, the instructors provided by the Defendant were not skillful teachers and their conduct and behavior were often unprofessional.

23.    The instructors did not adequately communicate the school's curriculum.    Instructors either ignored the curriculum and went off in their own direction or could not teach the actual curriculum. As a result, students in introductory courses were not prepared to advance to higher levels.

24. The instructors often did not tolerate questions or did not have the patience to respond to questions or problems raised by the students.

25. Certain instructors made snide, sarcastic and nasty remarks when questions were posed or students raised problems.

5

26.     Instructors tended to have erratic attendance records so that "replacements" or "substitutes" were used and these "replacements" or "substitutes" were of little help. Often these "replacements" or "substitutes" had no idea where the prior lessons had ended and were not prepared or qualified to start new topics. Therefore, they just filled a time slot without disseminating any meaningful instruction or training.

27.  On some occasions, when a regular instructor did not show up and there was no prior warning, students were made to wait in the classroom by themselves for a long period of time. Thereafter, the students would be informed that there were no "replacements" or "substitutes" and the students would be sent home.

28.  Certain instructors improperly interjected personal matters into their presentations.     Students were subjected to unwanted information about the instructors' personal lives.

29.  In particular, one instructor had an inclination to make improper and inappropriate remarks of a sexual nature on a regular basis. His "style" was to tie in the lessons of the day with some sort of sexual connotation.

30.  From time to time, the Plaintiff complained to representatives of the Defendant regarding the problems set forth above. However, these problems were not

6

suitably rectified even though other students made similar complaints and threatened
to withdraw from the school.

31. The Plaintiff did not receive the consideration from the Defendant for
which she bargained and paid.

32. As a result of the foregoing, the Plaintiff was damaged in the sum of
$8,354.00.

## AS AND FOR A SECOND CAUSE OF ACTION

33. Plaintiff repeats and realleges each and every allegation contained in
paragraphs 1 through 32 herein.

34. Defendant made numerous representations in order to induce the
Plaintiff to enroll in its school as heretofore set forth herein.

35. The Plaintiff relied on these representations.

36. The Defendant's representations were false.

37. The Plaintiff was fraudulently induced to enter into the Agreement

7

with the Defendant.

38.    As a result of the above, Plaintiff was damaged in the sum of $8,354.00.

## AS AND FOR A THIRD CAUSE OF ACTION

39. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 38 herein.

40. The Defendant made numerous representations as heretofore set forth herein regarding the quality of its school, the quality of the education to be furnished, the capability of its instructors and the dedication that it had towards helping students prepare for careers in the computer field.

41.   The Plaintiff relied on such representations in enrolling in the Defendant's school and continuing with the program.

42. Such representations turned out to be false.

43. As a result of Defendant's fraud and misrepresentation, the Plaintiff was damaged in the sum of $8,354.00.

8

## AS AND FOR A FOURTH CAUSE OF ACTION

44. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 herein.

45. The conduct, neglect and attitude of the Defendant was of an outrageous, wanton, and offensive nature and of a nature that should be punished by this Court.

46. The Defendant induced the Plaintiff and others to enroll in its computer related courses.

47. The Defendant's computer courses were supposed to be specifically geared to career training and were supposed to create opportunities or students in computer related fields.

48. The Defendant knew or should have known the importance of its school to its students since such students were relying on the training that they received from the Defendant to obtain jobs and pursue careers.

49. Instead of fulfilling its promises to its students, the Defendant

9

created, or allowed to exist, a substandard course of instruction, a poor selection of instructors and an overall horrifying and demoralizing experience.

50. Among the representations made by the Defendant was that the Defendant was dedicated to providing education and training that would lead to employment in the "Information Technology" field and was qualified to provide such education and training.

51. The Defendant represented, among other things, that it would provide "the highest quality training that enables a person to start or enhance their career as computer professional."

52. The Defendant represented, among other things, that its facilities and faculty were designed "to stimulate a business-like environment so students not only gain technical skills, but develop the professional attributes that are attractive to employers."

53. The Defendant represented that it had instructors that were knowledgeable in the computer field and were able to skillfully and professionally impart such knowledge to students.

54. The Defendant did not provide "the highest quality training" that

10

would enable a person to "start or enhance their career as computer professional."

55. The Defendant's facilities and faculty did not "stimulate a business-like environment so that students would not only gain technical skills, but would develop the professional attributes that are attractive to employers."

56. The Defendant's instructors were not able to skillfully and professionally impart such knowledge to students.

57. In particular, the instructors provided by the Defendant were not skillful teachers and their conduct and behavior were often not professional.

58. The instructors did not adequately communicate the school's curriculum. Instructors either ignored the curriculum and went off in their own direction or could not teach the actual curriculum. As a result, students in introductory courses were not prepared to advance to higher levels.

59. The instructors often did not tolerate questions or did not have the patience to respond to questions or problems raised by the students.

60. Certain instructors made snide, sarcastic and nasty remarks when questions were posed or students raised problems.

11

61.    Instructors tended to have erratic attendance records so that "replacements" or "substitutes" were used and these "replacements" or "substitutes" were of little help. Often these "replacements" or "substitutes" had no idea where the prior lessons had ended and were not prepared or qualified to start new topics. Therefore, they just filled a time slot without disseminating any meaningful instruction.

62.    On some occasions, when a regular instructor did not show up (without prior warning), students were made to wait in the classroom by themselves for a long period of time.    Thereafter, they would be informed that there were no "replacements" or "substitutes" and the students were sent home.

63.    Certain instructors improperly interjected personal matters into their presentations.    Students were subjected to unwanted information about the instructors' personal lives.

64.    In particular, one instructor had an inclination to make improper and inappropriate remarks of a sexual nature on a regular basis.    His "style" was to tie in the lessons of the day with some sort of sexual connotation.

65.    The Defendant failed and neglected to adequately screen instructors for proper teaching skills and temperament and failed and neglected to properly

12

monitor the instructors' classroom abilities and demeanor.

66. From time to time, the Plaintiff complained to representatives of the Defendant regarding the problems set forth above. However, these problems were not suitably rectified even though other students made similar complaints and threatened to withdraw from the school.

67. The Defendant's conduct, neglect and uncaring attitude should be punished so as to discourage the Defendant from inflicting such conduct, neglect and uncaring attitude on other students who enroll in their programs.

68. Plaintiff is entitled to an award of punitive damages against the Defendant in the sum of $25,000.00

## AS AND FOR A FIFTH CAUSE OF ACTION

69. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 68 herein.

70. The "Web Development and Business Training" Program that the Plaintiff enrolled in consisted of six (6) "quarters" to take place over 21 months.

13

71.   In order for the Plaintiff to obtain the training and experience necessary for a career that she was seeking in the computer field, the Plaintiff had to complete all six (6) quarters.

72. After September 11, 2001, the school that the Plaintiff attended at 22 Cortlandt Street, New York, New York, was closed.

73.   Thereafter Defendant did not make any arrangements whatsoever for the students at 22 Cortlandt Street, New York, New York (the "Cortlandt School") to continue to attend classes in Manhattan.

74.   Thereafter Defendant did not make any arrangements whatsoever for the students at the Cortlandt School, New York to continue to attend classes in any of the five (5) boroughs of New York City.

75.   The only arrangements offered by Defendant involved remote locations outside of New York City either in Nassau County or in the State of New Jersey.

76.   The Defendant knew or should have known that such arrangements would be totally untenable for night students who worked during the day and/or for students who lived in the borough of Brooklyn.

14

77. As a result of the above, the continuation of Plaintiff's studies was interrupted.

78. After such long interruption, the Defendant belatedly opened a school in the midtown area of Manhattan (the "Midtown Location").

79. At such Midtown Location, the Defendant had a course already in progress which was nearing the point at which the Plaintiff's last course had left off. Defendant indicated that students from the Cortland School could continue their program by joining such course at the Midtown Location. However, the schedule of classes at the Midtown Location was not the same as the schedules that the Cortlandt School had offered.

80. Due to religious observances, the Plaintiff cannot attend classes on Friday nights or Saturdays.

81. At the Cortlandt School, the Plaintiff was able to schedule a course each quarter which did not require attendance on Friday evenings on Saturdays.

82. At the Midtown Location, the only opportunity afforded to Plaintiff to continue her studies was unsuitable because it required attendance on Saturdays.

15

83.   As a result of the above, the Plaintiff could not continue her enrollment at the Chubb Institute and could not complete the Web Development and Business Training Program.

84.   The inability to complete the Program rendered all of the prior coursework attended by Plaintiff utterly useless.

85.   In the first place, the lack of teaching skills by Defendant's instructors meant that the Plaintiff did not already have at least the basic knowledge and training necessary for a career in the computer field.

86.   In the second place, the courses to be taught in the last three quarters of the Program were in web development and design which were the courses which were absolutely required for Plaintiff's career choice and the courses which lead the Plaintiff to enroll in Defendant's school.

87.   As a result of the foregoing, the Plaintiff was damaged in the sum of $8,354.00.

**WHEREFORE**, Plaintiff demands judgment against Defendant The Chubb Institute, Inc. on the First Cause of Action in the sum of $8,354.00, on the Second

16

Cause of Action in the sum of $8,354.00, on the Third Cause of Action in the sum of $8,354.00, on the Fourth Cause of Action in the sum of $25,000.00 and on the Fifth Cause of Action in the sum of $8,354.00 together with interest, costs and disbursements.

Dated: December 16, 2003

Howard J. Peltz (0047)
Attorney for Plaintiff
60 Madison Avenue
New York, New York 10010
(212) 686-0707

17

## **VERIFICATION**

STATE OF NEW YORK   } ss:
COUNTY OF NEW YORK}

      FAIGY MINKOWITZ, being duly sworn, deposes and says:

      1. I am the Plaintiff in this action and as such I am familiar with the facts and circumstances herein.

      2. I have read the foregoing amended complaint and state that the contents are true to my own knowledge except as to those matters alleged to be upon information and belief and as to those matters I believe them to be true. The grounds of my belief as to all matters not stated upon my own knowledge are books and records maintained for the Plaintiff.

                                     FAIGY MINKOWITZ

Sworn to before me on
December 16, 2003

HOWARD J. PELTZ
Notary Public, State of New York
No. 2?-4663213
Qualified in New York County
Commission Expires July 31, 2005

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

FAIGY MINKOWITZ,

                              Plaintiff,

                                                    **AFFIRMATION**
- against -                                         **OF SERVICE**
                                                    03 CV 1335
THE CHUBB INSTITUTE, INC.,                          Judge Trager

                              Defendant,

---------------------------------------------------------------------X

        HOWARD J. PELTZ, an attorney duly admitted to practice law in the
Courts of the State of New York, affirms the following under penalty of perjury:

        1. I am over 18 years of age, have an office in New York City and am
not a party to this proceeding.

        2. On December 17, 2003, I served the within Amended Complaint on
Bressler, Amery & Ross, P.C., Attorneys for Defendant, by delivering a true copy of
same to their office at 17 State Street, New York, New York 10004.

Affirmed:    December 17, 2003

                                                    HOWARD J. PELTZ (0047)